**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| DAVID PUTZER, | ) | 3:07-CV-00498-LRH (RAM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | **OF U.S. MAGISTRATE JUDGE** |
| | ) | |
| GLEN WHORTON, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss (Doc. #14). Plaintiff opposed the motion (Doc. #20) and Defendants replied (Doc. #21).[1] Also before the court is Plaintiff's Motion for Class Action Certification (Doc. #12). Defendants opposed the motion (Doc. #18) and Plaintiff replied (Doc. #19).

The court has thoroughly reviewed the pleadings and recommends Defendants' motion to dismiss be granted in part and denied in part. The court further recommends Plaintiff's motion for class certification be denied.

/ / /

---

[1] Plaintiff also filed a Motion for Enlargement of Time (Doc. #22) to file an opposition to Defendants' reply to the instant motion to dismiss. Defendants opposed the motion arguing Plaintiff is requesting to file a fugitive document (Doc. #24). Defendants improperly raised arguments for the first time in their reply; thus, an opposition to those new arguments would not constitute a fugitive document. Nevertheless, the court declines to consider Defendants' new arguments; therefore, an opposition is unnecessary. Accordingly, Plaintiff's request for an enlargement of time is **DENIED AS MOOT**.

**BACKGROUND**

At the time of his Complaint, Plaintiff was a prisoner in Lovelock Correctional Center (LCC) in Lovelock, Nevada in the custody of the Nevada Department of Corrections (NDOC) (Doc. #6). Currently, Plaintiff is housed at Casa Grande Transitional Center (CGTC) in Las Vegas, Nevada (Doc. #12). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), alleging state officials violated his Fourteenth Amendment Due Process rights and Equal Protection rights (*Id.* at 5). Plaintiff also asserts a claim against Defendants for civil conspiracy (*Id.*).

Plaintiff alleges state officials violated his due process rights by labeling him a sex offender on or about February, 2006, without due process of law (*Id.*). Plaintiff asserts he has a liberty interest in his classification as a sex offender because the label is stigmatizing and prohibits Plaintiff from participating in "work camp, drug court and casa granda which could facilitate an early release from prison." (*Id.*). Basically, Plaintiff contends the inability to participate in these programs affects his ability to earn work-time credits and earning work-time credits would result in an earlier release from prison (*Id.*). Plaintiff also contends he was denied minimum custody due to this stigmatizing label (*Id.*). Plaintiff asserts he is entitled to procedural due process protections under NRS 209.351 and Administrative Regulation (AR) 501 (*Id.*). Plaintiff alleges he was never informed that he might be classified a sex offender, he was not given a written statement by the fact finder indicating the evidence relied upon to classify him as a sex offender, and he never appeared before the classification committee during his initial classification (*Id.*).

Plaintiff also alleges state officials violated his Equal Protection rights by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." (*Id.* at 7). Apparently, Defendants labeled Plaintiff a sex offender based on an arrest for rape that took place in New York in 1984 (Doc. #6 at 7). The charge was subsequently dismissed on February 28, 1985 (*Id.*). Plaintiff was never "convicted" of a sexually based offense (*Id.*). However, according to Plaintiff, he was

2

1   informed that he is considered a sex offender if he ever had any sexually based "arrests" in
2   his past (*Id.* at 6).   Plaintiff asserts, on May 14, 2007,  he presented the reclassification
3   committee with a certified dismissal of his 1984 arrest; however, Plaintiff asserts he was
4   informed by the reclassitation committee that they would not accept legal documentation
5   from an inmate (*Id.* at 8).

6           Plaintiff requests declaratory relief, compensatory and punitive damages, permanent
7   injunctive relief, court costs and attorney's fees  (*Id.* at 17-18).  Plaintiff also requests class
8   certification (*Id.*; *see also* Doc. #12).

9                         **DEFENDANTS' MOTION TO DISMISS**

10  **I.      STANDARD FOR MOTION TO DISMISS**

11          "A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law."
12  *North Star Inter'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted).
13  In considering a motion to dismiss for failure to state a claim upon which relief may be
14  granted, all material allegations in the complaint are accepted as true and are to be construed
15  in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,
16  337-338 (9th Cir. 1996) (citation omitted).  For a defendant-movant to succeed, it must appear
17  to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be
18  proven under the allegations of the complaint. *Id.* at 338.  A complaint may be dismissed as
19  a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a
20  cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th
21  Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.
22  1984)).

23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28                                        3

1   ## II.   __DISCUSSION__

2   Defendants move for dismissal on each of Plaintiff's claims asserting Plaintiff has no

3   protected liberty interest in a particular classification, confinement to a particular prison, or

4   to any rehabilitative programming or a prison job (Doc. #14 at 6).  Defendants further assert

5   Plaintiff has not alleged facts which would implicate any protected liberty interest in his sex

6   offender classification and NRS 209.481 does not create a liberty interest in confinement to

7   a minimum security facility (*Id.* at 6-8).  Finally, Defendants assert Plaintiff has not alleged

8   facts sufficient to state a civil conspiracy claim because Plaintiff has not shown a meeting of

9   the minds, an intent to discriminate against him or that he is in a protected class (Doc. #14

10  at 9-10).  Defendants contend a conspiracy claim cannot be premised upon an institutional

11  policy and the classification regulation applies to all inmates at NDOC (*Id.* at 10-11).

12  Plaintiff argues his classification as a sex offender resulted in an atypical and significant

13  hardship, which created a liberty interest sufficient to invoke procedural due process

14  protections (Doc. #20 at 2).  Plaintiff further argues that *Kritenbrink v. Crawford*, a District

15  of Nevada case, supports his theory that he has a protected liberty interest in his sex offender

16  classification and the Ninth Circuit has held that labeling someone a sex offender is inherently

17  stigmatizing (*Id.* at 5-6).  Finally, Plaintiff argues AR 521 shows a meeting of the minds

18  sufficient to support his civil conspiracy claim (*Id.* at 9).

19  Defendants respond that the Due Process Clause does not give Plaintiff a protected

20  liberty interest, as Plaintiff does not allege mandatory participation in any treatment facility

21  or therapy program based upon his initial classification and Plaintiff fails to meet two (2)

22  *Sandin* factors needed to show a state-created liberty interest (Doc. #21 at 2-3).  Defendants

23  also respond that Plaintiff failed to rebut their argument that NRS 209.481 does not create

24  a liberty interest in confinement to a minimum security facility (*Id.* at 4) and Plaintiff's

25  conspiracy claim fails because sex offenders are not a protected class and AR 521 is applied

26  neutrally to all inmates (*Id.* at 6).

27  ///

28  4

1

### A.   DUE PROCESS CLAIM

2      The Fourteenth Amendment prohibits any state from depriving "any person of life,

3 liberty, or property, without due process of law," and protects "the individual against arbitrary

4 action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  Those who seek to

5 invoke due process protections must establish one of these interests it at stake. *Wilkinson v.*

6 *Austin*, 545 U.S. 209 (2005).  Here, Plaintiff asserts his classification as a sex offender

7 implicates a liberty interest, thus entitling him to procedural due process (Doc. #6; Doc. #20).

8 An examination of Plaintiff's Due Process claim requires the court answer two (2) questions:

9 1) Is there such a liberty interest? and 2) If so, what process is due? *Neal v. Shimoda*, 131 F.3d

10 818, 827 (9th Cir. 1997).

11         **1.      Liberty Interest in Sex offender Classification**

12      A liberty interest may arise from either of two (2) sources: the due process clause or

13 state law. *Id.*; *see also Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Toussiant v. McCarthy*,

14 801 F.2d 1080, 1089 (9th Cir.1986), *cert. denied*, 481 U.S. 1069 (1987).  In the prison setting,

15 a liberty interest arising from the Constitution itself is implicated when conditions of

16 confinement "exceed[] the sentence in such an unexpected manner as to give rise to protection

17 by the Due Process Clause of its own force ..." *Sandin v. Conner*, 515 U.S. 472, 484 (1995);

18 *see also Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital); *Washington*

19 *v. Harper*, 494 U.S. 210, 221-222 (1990) (involuntary administration of psychotropic drugs).

20 A state created liberty interest, on the other hand, is "generally limited to freedom from

21 restraint which, while not exceeding the sentence in such an unexpected manner as to give

22 rise to protection by the Due Process Clause ... nonetheless imposes atypical and significant

23 hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S.

24 at 484.

25

26

27

28                                             5

1    Both Plaintiff and Defendant turn to Judge Reed's decision in *Kritenbrink v. Crawford*,

2    457 F. Supp. 2d 1139 (D. Nev. 2006)[2] to support their positions. This court also finds

3    *Kritenbrink* persuasive as the facts are strikingly similar to the facts of this case and

4    *Kritenbrink* relies heavily upon the Supreme Court's decision in *Sandin* and the Ninth

5    Circuit's decision in *Neal*.

6    In *Kritenbrink,* the plaintiff was classified a sex offender based on a 1977 rape arrest

7    in Alaska. *Id*. at 1142. That charge was subsequently dismissed and he was not convicted of

8    a sexually related offense. *Id*. Nevertheless, NDOC labeled the plaintiff a sex offender based

9    on the rape arrest without providing the plaintiff with notice and a hearing prior to that

10   classification. *Id*. The plaintiff made essentially the same arguments as Plaintiff in this case;

11   namely, the sex offender classification resulted in mandatory and automatic denial of

12   minimum custody status and prohibited him from being transferred to a conservation camp,

13   and the denial of minimum custody prevented the plaintiff from earning good time credits,

14   which cost the plaintiff ten (10) days of good time credits pre month. *Id*. The plaintiff

15   unsuccessfully attempted to change his classification with the help of his mother and alleged

16   the classification resulted in stigmatizing consequences and treatment as though he was a

17   "convicted" sex offender. *Id*.

18   In briefly summarizing the holding in *Kritenbrink*, Judge Reed found the "stigma plus

19   the denial of minimum security classification and work camp assignments does not constitute

20   conditions of confinement exceeding [plaintiff's] sentence in an unexpected manner so as to

21   give rise to a liberty interest under the Due Process Clause itself." *Id*. at 1147. However, "the

22

23        [2] Defendants initially cite to *Kritenbrink v. Crawford*, 313 F. Supp. 2d 1043 (D. Nev. 2004) where the
     court indicated the plaintiff's confinement at a higher security prison and lack of opportunity to attend work camp
24   and earn work credits did not exceed his sentence in such and unexpected manner so as to give rise to protections
     under the Due Process Clause. In October, 2006, the court again considered the plaintiff's due process argument
25   and, referring to it's previous order of 2004, the court noted that it did not analyze whether those disadvantages
     combined with the stigmatization of being labeled a sex offender gives rise to a liberty interest under the Due
26   Process Clause. *Kritenbrink v. Crawford*, 457 F. Supp. 2d 1139, 1145 (D. Nev. 2006). Here, Plaintiff alleges those
     same disadvantages combined with the stigmatization; thus, this Report and Recommendation focuses on the
27   2006 order.

28                                                        6

stigmatizing label in conjunction with these disadvantages goes beyond the typical hardships of prison life" and "when examining all three guideposts [as set forth in *Neal*] together, we find [plaintiff's] classification as a sex offender resulted in 'atypical and significant hardship ... in relation to the ordinary incidents of prison life' sufficient to invoke the procedural protections of the Due Process Clause." *Id.* at 1149. Thus, Judge Reed found the plaintiff had a state created liberty interest in his sex offender classification and was not afforded due process as required under *Neal. Id.* Judge Reed went on to find that the only defendant who personally participated in the plaintiff's classification was entitled to qualified immunity, as the relevant facts took place prior to the Ninth Circuit's 1997 decision in *Neal. Id.* at 1149-1151. Based upon qualified immunity for the defendant who personally participated in the deprivation and lack of personal participation of the remaining defendants, Judge Reed granted summary judgment in favor of the defendants. *Id.* at 1151.

   *Kritenbrink* supports Plaintiff's argument that he, in fact, does have a protected liberty interest in his sex offender classification despite Defendants' contention otherwise. Defendants argue that this case is distinguishable from *Kritenbrink* because Plaintiff's sex offender classification has not spanned his entire incarceration (Doc. #21 at 3). However, Defendants' argument is unpersuasive. While Judge Reed did acknowledge that the *Kritenbrink* plaintiff's classification spanned the entire duration of his incarceration, it must be noted that the plaintiff in *Kritenbrink* was incarcerated during the entire relevant period. Here, the record indicates Plaintiff was not "in incarceration" prior to his initial sex offender classification (Doc. #20 at 4). Defendants assert Plaintiff was previously on parole and was re-incarcerated by NDOC on or about February, 2006 when he was classified a sex offender (Doc. #14 at 2). Plaintiff asserts he was on probation and, on or about December, 2005, the court revoked his probation imposing the original sentence and he was, then, classified a sex offender at his initial classification (Doc. #20 at 4). Under either set of facts, it appears Plaintiff's classification either did span his entire incarceration period in the event Plaintiff was on probation, or has spanned the entire re-incarceration period in the event Plaintiff was

7

1   on parole.  Thus, Plaintiff's classification has spanned the entire duration of *this* relevant

2   incarceration period; therefore, Defendants' argument that this case is distinguishable from

3   *Kritenbrink* on those grounds lacks merit.

4            Defendants also argue that "it is simply too attenuated to speculate whether Plaintiff

5   would have initially been confined to a minimum security facility, or whether he would have

6   remained there indefinitely, but for the sex offender classification (Doc. #21 at 4).  However,

7   just as Judge Reed found in *Kritenbrink* in taking the evidence in the light most favorable to

8   the plaintiff, and construing all Plaintiff's allegations as true under these facts, Plaintiff was

9   denied minimum custody status and work camp assignments as a result of his sex offender

10  status.  And, while those denials alone do not give rise to a protected liberty interest, "the

11  stigmatizing label in conjunction with these disadvantages goes beyond the typical hardships

12  of prison life." *Kritenbrink*, 457 F. Supp. 2d at 1149.  Thus, under the *Kritenbrink* analysis

13  relied on by both parties, Plaintiff has a state created liberty interest in his sex offender

14  classification and was entitled to procedural due process protections.  Accordingly, this court

15  cannot say it appears to a certainty that Plaintiff will not be entitled to relief under any set of

16  facts that could be proven under the allegations of the complaint.

17                    **2.    Process Due When Classifying an Inmate a Sex Offender**

18            The parties do not dispute that Plaintiff was not afforded the procedural protections

19  as outlined in *Neal*, which include 1) a prior hearing with the ability to call witnesses and

20  present documentary evidence, 2) advance written notice of the prior hearing, and 3) a written

21  statement by the fact-finder of the evidence relied on and the reasons for the inmate's

22  classification as a sex offender. *Neal*, 131 F.3d at 830.  Like the plaintiff in *Neal*, here, plaintiff

23  has never been convicted of a sex offense and has never had an opportunity to formally

24  challenge the imposition of the "sex offender" label in an adversarial setting. *Neal*, 131 F.3d

25  at 831.  Furthermore, as in *Neal*, the fact that Plaintiff was indicted for a sex crime does not

26  satisfy due process.  "Because the prison's classification of inmates as sex offenders and the

27  mandatory successful completion of the SOTP as precondition for parole eligibility implicate

28                                                    8

1    a protected liberty interest ... an inmate who has never been convicted of a sex offense, is

2    entitled to the procedural protections outlined by the Supreme Court in Wolff." *Neal*, 131 F.3d

3    at 831.[3]

4        For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Due Process claim

5    should be **DENIED**.

6        **B.    CIVIL CONSPIRACY UNDER 42 U.S.C. § 1985(3)**

7        To bring a cause of action under § 1985(3), a plaintiff must allege and prove the

8    following four (4) elements: 1) a conspiracy; 2) for the purpose of depriving, either directly

9    or indirectly, any person or class of persons of the equal protection of the laws, or of equal

10   privileges and immunities under the laws; and 3) an act in furtherance of this conspiracy; 4)

11   whereby a person is either injured in his person or property or deprived of any right or

12   privilege of a citizen of the United States. *United Brotherhood of Carpenters and Joiners of*

13   *America v. Scott*, 463 U.S. 825, 828-829 (1983).  The second element also requires the

14   plaintiff to demonstrate a deprivation of that right motivated by "some racial, or perhaps

15   otherwise class-based, invidiously discriminatory animus behind the conspirators' action."

16

17

18

19

20        [3] The court notes Defendants raised the "personal participation" and "qualified immunity" arguments as

21   outlined in *Kritenbrink* in their reply brief.  As previously noted, the court declines to consider Defendants' newly
     raised arguments where Plaintiff had no opportunity to respond.  Nevertheless, the court notes the Ninth Circuit's

22   decision in *Neal* was decided well before the facts giving rise to Plaintiff's complaint. *Neal*, 131 F.3d 818.
     Furthermore, as the *Kritenbrink* court noted, despite the "mandatory consequences" language in *Neal*, *e.g.*,

23   mandatory successful completion of a treatment program, under these facts it appears no discretion remains with
     regard to eligibility for minimum custody and work assignments essentially leaving officials with no discretion

24   once an inmate is labeled, thereby, satisfying the mandatory consequences language. *Kritenbrink*, 457 F. Supp.
     2d at 1148, n.4. While *Sandin*, which outlines the three (3) guideposts that frame the state created liberty interest

25   analysis, may not have made it sufficiently clear that classification of an inmate as a sex offender implicated a state
     created liberty interest, it can be argued that the *Neal* court made clear that such conduct was unlawful under

26   these facts.  And, here, unlike in *Kritenbrink* where the court granted qualified immunity based on the timing of
     the events related to the date *Neal* decision was issued, these facts took place well after the Ninth Circuit's

27   decision in *Neal*.

28                                                    9

1  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).[4]  Thus, Plaintiff must allege he is a member

2  of a class the statute is designed to protect. *Id.*

3      Defendants assert, among other arguments, that Plaintiff has failed to allege the

4  conspiracy is racially or suspect-class motivated (Doc. #14 at 10). Plaintiff argues that AR 521

5  is "class based on the premis (sic) that an inmate was arrested for a sex crime therefore not

6  allowed Equal Privileges of minimus (sic) coustudy (sic) and work camp credits." (Doc. #20

7  at 9).  Thus, Plaintiff is basically arguing that sex offenders and/or persons arrested for a sex

8  crime are classes protected under § 1985(3).

9      The general rule in the Ninth Circuit is that "section 1985(3) is extended beyond race

10  only when the class in question can show that there has been a governmental determination

11  that its members require and warrant special federal assistance in protecting their civil rights.

12  More specifically, we require either that the courts have designated the class in question a

13  suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has

14  indicated through legislation that the class required special protection. This rule operates

15  against a background rule that 42 U.S.C. § 1985(3) is not to be construed as a general federal

16  tort law." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (internal quotations

17  and citations omitted).

18      Sex offenders and persons arrested for sexually based offenses are not entitled to the

19  protections of § 1985(3), as courts have not designated such persons a suspect or quasi-suspect

20  class, Congress has not passed legislation including such individuals within the special

21  protection of any federal statute, and neither group has been singled out for special federal

22  protection legislatively or judicially. *Sever*, 978 F.2d at 1537.  Furthermore, the Ninth Circuit

23  has expressly found "[s]ex offenders are not a suspect class." *United States v. LeMay*, 260 F.3d

24  _____

25  [4] A unanimous Supreme Court held in *Griffin* that the language of § 1985(3), requiring an intent to deprive the victim of equal protection or equal privileges and immunities, must be limited to cases alleging some racial or otherwise class-based invidious discrimination. 403 U.S. at 102.  The Court explained that such an

26  interpretation gives full effect to the congressional purpose behind the law and avoids turning § 1985(3) into a "general federal tort law." *Id.*  The Supreme Court subsequently limited *Griffin* to the first clause of § 1985(3).

27  *Kuch v. Rutledge*, 460 U.S. 719 (1983); *see also Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985).

28

1018, 1030 (9th Cir. 2001).  Accordingly, Defendants' motion to dismiss Plaintiff's § 1985(3)

civil conspiracy claim should be **GRANTED**.

**PLAINTIFF'S MOTION FOR CLASS ACTION CERTIFICATION**

## I.     STANDARD FOR CLASS CERTIFICATION

Class actions are governed by FED. R. CIV. P. 23.  Rule 23(a) provides the following

prerequisites must be met in order for the court to grant class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) further provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

11

The party seeking class certification bears the burden of demonstrating he has met each of the four (4) requirements of Rule 23(a) and at least one requirement of Rule 23(b).  The failure to meet any one of Rule 23's requirements destroys the alleged class action. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 561 (2d Cir. 1968)).

One of the goals of class action litigation is to save the resources of both the courts and the parties "by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). This is accomplished in part by allowing the class to proceed on a representative basis; a class representative functions as a stand-in for the entire class and assumes duties on behalf of the class. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155.  Nevertheless, while class representatives stand in the stead of their fellow class members, Rule 23 recognizes that the absent class members' rights must be scrupulously observed. *Cummings v. Connell*, 402 F.3d 936, 944 ( 9th Cir. 2005).  Thus, Rule 23 allows defendants to resolve their liability to all class members who have not opted out in one case; however, the court must first find "the representative parties will fairly and adequately protect the interests of the class." *Powers v. Eichen*, 229 F.3d 1249, 1254 (9th Cir. 2000).

Class members who are not parties to a class action suit are bound by the judgment in the suit and due process is satisfied if the absent members' interests are fairly and adequately represented by the class members who are present. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Adequate representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992) (quotation omitted), *cert. denied*, 511 U.S. 117 (1994); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.  While the trial

1    court has broad discretion to certify a class, its discretion must be exercised within the

2    framework of Rule 23." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th

3    Cir. 2001) (internal citations omitted).

4         ## A.   NUMEROSITY

5         Numerosity is the first requirement under Rule 23(a).  Plaintiff must show the class

6    is so numerous that joinder is impracticable.  "[I]mpracticability does not mean impossibility,

7    but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm*

8    *Springs Alpine Est., Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) (citing *Advert. Specialty Nat.*

9    *Assn. v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).

10        Defendants assert Plaintiff has failed to show the putative class is so numerous that

11   joinder is impracticable (Doc. #18 at 5).  Specifically, Defendants assert that Plaintiff's reliance

12   on a letter drafted by a Las Vegas Deputy Attorney General indicating there are "several"

13   classification challenges like Plaintiff's does not satisfy the numerosity requirement because

14   "several" does not mean "a lot" and Plaintiff is not personally aware of the identity of these

15   several other inmates.

16        Plaintiff argues that the class is numerous and joinder of all members is impracticable,

17   as AR 521 dates back to at least as early as 1997 and is still in effect today (Doc. #19).

18        The Court need not know the exact size of the putative class, "so long as general

19   knowledge and common sense indicate that it is large." *Ali v. Ashcroft*, 213 F.R.D. 390 (W.D.

20   Wash. 2003), *aff'd*, 346 F.3d 873 (9th Cir. 2003), *opinion withdrawn on other grounds on*

21   *denial of reh'g*, 421 F.3d 795 (9th Cir. 2005).  A class which includes unnamed and unknown

22   future members supports the numerosity requirement regardless of the class size, as joinder

23   of said members is impracticable. *Id.*

24        The letter attached to Plaintiff's motion indicates the Attorney General's Office in Las

25   Vegas, on or about May 16, 2007, had "recently received several such challenges", referring

26   to challenges to a sex offender classification based on a mere arrest for a sexual offense, rather

27   than a conviction, without due process protections (Doc. #12 at 6).  Defendants contend that

28

13

1   this letter should compel the court to find numerosity is not met (Doc. #18 at 6).  The letter

2   indicates there may be other members of a legally definable class; however, the inmates

3   referred to in the letter are certainly ascertainable and Plaintiff has not shown that these other

4   inmates cannot be joined.  Furthermore, based on the letter, it is unclear how many other

5   inmates and potential class members may exist.  "Several" may indicate three (3) or it may

6   indicate more.  If there are only three (3) or even ten (10) other putative class members,

7   joinder may not be impracticable.  And while the court need not know the exact size of the

8   putative class, Plaintiff must at least show that general knowledge and common sense indicate

9   that it is large.  Plaintiff has not made such a showing here.  Under these facts, Plaintiff has

10  failed to show the class is so numerous that joinder of all its members is impracticable.

11  Accordingly, the numerosity requirement is not met.

12          **B.   COMMONALITY**

13          Commonality is the next requirement under Rule 23(a)(2).  Plaintiff must show there

14  are questions of law or fact common to the class.  Commonality is met if the plaintiffs'

15  grievances share a common question of law or fact. *Armstrong v. Davis*, 275 F.3d 849, 868

16  (9th Cir. 2001). Furthermore, in the Ninth Circuit, "commonality is satisfied where the lawsuit

17  challenges a system-wide practice or policy that affects all of the putative class members." *Id*.

18  (citing *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985)).

19          Although Defendants challenge commonality, there is no dispute that Plaintiff is

20  challenging AR 521, which is a system-wide practice or policy that affects all of the putative

21  class members – inmates classified as sex offenders based on an arrest for a sexually based

22  offense, rather than an actual conviction.  Accordingly, under these facts, the commonality

23  requirement is met.

24          **C.   TYPICALITY**

25          The next requirement under Rule 23(a)(3), typicality, requires Plaintiff to demonstrate

26  that the claims or defenses of the representative parties are typical of the claims or defenses

27  of the class.  "Typicality ... is said to require that the claims of the class representatives be

28                                                              14

1   typical of those of the class, and to be 'satisfied when each class member's claim arises from

2   the same course of events, and each class member makes similar legal arguments to prove the

3   defendant's liability.'" *Armstrong*, 275 F.3d at 868 (citing *Marisol v. Giuliani*, 126 F.3d 372,

4   376 (2d Cir. 1997)).

> Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different. In such a case, because the cause of the injury is the same-here, [NDOC's Administrative Regulation 521]-the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class. We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.

*Armstrong*, 275 F.3d at 868-869.

Defendants assert Plaintiff fails to meet the typicality requirement because Plaintiff has not been injured (Doc. #18 at 8). In the alternative, Defendants assert Plaintiff's claims are not typical of other class members because he was transferred to a minimum security facility on two (2) occasions[5] and the denial of a minimum security facility is the alleged injury that forms at least part of the basis of Plaintiff's claims, as well as those of other putative class members (*Id.*).

Plaintiff essentially argues he is seeking system-wide injunctive relief, he is realistically threatened by repetition of the violation, and he has suffered similar injuries by being denied a minimum security facility from February 2006 through September 2007 based solely on his sex offender status (Doc. #19).

As previously stated, the Ninth Circuit does not insist on identical injuries, only that the unnamed class members have injuries *similar* to those of Plaintiff and that the injuries result from the same, injurious course of conduct. *Armstrong*, 275 F.3d at 869. Here, the injuries are certainly similar, if not identical – denial of minimum custody status, denial of

---

[5] It should be noted that one such transfer took place only five (5) days after Plaintiff filed his proposed complaint (Doc. #18 at 8).

1    work camp credits and the stigmatization associated with the sex offender classification. *See*

2    *Kritenbrink*, 457 F. Supp. 2d 1139; *Neal*, 131 F.3d 818.  Common sense dictates that any

3    putative plaintiffs are or will suffer the same or similar injuries if they are classified as  sex

4    offenders pursuant to AR 521 for sexually based arrests.  Accordingly, under these facts, the

5    typicality requirement is met.

6            **D.    FAIR AND ADEQUATE CLASS REPRESENTATIVE**

7            The fourth requirement under Rule 23(a)(4) requires the Plaintiff to show he will fairly

8    and adequately protect the interests of the class.   As previously stated, "[a]dequate

9    representation 'depends on the qualifications of counsel for the representatives, an absence

10   of antagonism, a sharing of interests between representatives and absentees, and the

11   unlikelihood that the suit is collusive.'" *Local Joint Executive Bd. of Culinary/Bartender Trust*

12   *Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001) (citing *Crawford v. Honig*,

13   37 F.3d 485, 487 (9th Cir. 1994) (quoting *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390

14   (9th Cir. 1992)).  In addition, "[a] named plaintiff in a class action must show that the threat

15   of injury in a case such as this is 'real and immediate,' not 'conjectural' or 'hypothetical.'  A

16   litigant must be a member of the class which he or she seeks to represent *at the time the class*

17   *action is certified* by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (emphasis

18   added).  Finally, the class representative "must possess the same interest and *suffer the same*

19   *injury* shared by all members of the class he represents.*" Schlesinger v. Reservists Committee*

20   *to Stop the War*, 418 U.S. 208, 216 (1974) (emphasis added); *see also Epstein v. MCA, Inc.,*

21   179 F.3d 641, 652 (9th Cir. 1999).

22           Here, Plaintiff has failed to show he will fairly and adequately represent the class for

23   several reasons.  First, Plaintiff is not currently suffering the same injury shared by all the

24   putative class members.  The crux of Plaintiff's claims and those of putative class members

25   is the denial of minimum custody status, denial of work camps and denial of work credits

26   based on the sex offender classification (Doc. #6).  It is undisputed that Plaintiff is currently

27   housed in a minimum custody facility working as a community trustee; thus, Plaintiff is not

28                                                16

1    suffering the same injuries as the putative class (Doc. #20 at 9) .  Furthermore, it appears

2    Plaintiff has been housed in a minimum custody facility during most of the course of this

3    litigation (Doc. #18 at 8).

4           Second, Plaintiff is currently housed at Casa Grande Transitional Center (CGTC) in Las

5    Vegas, Nevada, which is a "facility designated by the Director to house inmates in urban areas

6    for the purpose of providing services to inmates *in the latter stages of their incarceration*."

7    (*Id.* at 8, n.5 (emphasis added)).  Thus, it appears Plaintiff is in the latter stages of his

8    incarceration and will likely spend the remainder of his incarceration in a minimum custody

9    facility, unlike the putative class members he seeks to represent.

10          Finally, the binding effect of all class-action decrees raises substantial due-process

11   questions that are directly relevant to Rule 23(a)(4).  If the absent members are to be

12   conclusively bound by the result of an action prosecuted by a plaintiff alleging to represent

13   their interests, basic notions of fairness and justice demand that the representation they

14   receive be adequate.  *Hansberry*, 311 U.S. at 40-43 (graphically illustrating these

15   considerations).  In this case, it appears there are, at a minimum, at least "several" other

16   putative members who are currently suffering and continue to suffer the injuries alleged by

17   Plaintiff, which he no longer suffers (Doc. #12 at 6).  Thus, in the event class certification was

18   warranted, an inmate actually suffering the alleged injuries would more fairly and adequately

19   represent the class.  Plaintiff, an inmate in the latter stages of his incarceration currently

20   housed in a minimum custody facility and currently employed as a community trustee does

21   not fairly and adequately represent the class as basic notions of fairness and justice so demand.

22          Plaintiff has failed to meet two (2) of the requirements necessary for class certification.

23   As previously explained, the failure to meet any one of Rule 23's requirements destroys the

24   alleged class action. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975)

25   (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 561 (2d Cir. 1968)). Accordingly, Plaintiff's

26   motion for class certification should be **<u>DENIED</u>**.

27   / / /

28                                                   17

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING in part and DENYING in part** Defendants' Motion to Dismiss (Doc. #14) as follows:

    1)    Defendants' motion to dismiss Plaintiff's Due Process claim should be **DENIED**.

    2)    Defendants' motion to dismiss Plaintiff's § 1985(3) civil conspiracy claim should be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Class Action Certification (Doc. #12).

The parties should be aware of the following:

1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   August 6, 2008.

_____
UNITED STATES MAGISTRATE JUDGE