1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**
                                **DISTRICT OF NEVADA**
7

DAVID PUTZER,                        )          3:07-cv-00498-LRH (RAM)
8                                    )
            Plaintiff,               )          **REPORT AND RECOMMENDATION**
9      vs.                           )          **OF U.S. MAGISTRATE JUDGE**
                                     )
10  GLEN WHORTON, et al.,            )
                                     )
11          Defendants.              )
                                     )
12  _____)

13       This Report and Recommendation is made to the Honorable Larry R. Hicks, United

14  States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

15  to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the court is

16  Defendants' Motion for Summary Judgment. (Doc. #124.)[1]  Plaintiff has opposed (Doc. #134),

17  and Defendants have replied (Doc. #151).  Also before the court is Plaintiff's Motion for

18  Summary Judgment. (Doc. #131.)  Defendants have opposed (Doc. #151), and Plaintiff has

19  replied (Doc. #153).  After a thorough review, the court recommends that Defendants' motion

20  be granted and that Plaintiff's motion be denied.

21                               **I. BACKGROUND**

22       At all relevant times, Plaintiff David Putzer was in custody of the Nevada Department

23  of Corrections (NDOC).  (Pl.'s Compl. 1 (Doc. #6).)[2]  Plaintiff is currently an inmate at the

24  _____

25       [1] Refers to the court's docket number.

26       [2] The page numbers for Plaintiff's filings refer to the numbers in the top-right-hand corner of the page
    generated by the court's docketing system.  The page numbers for Defendants' filings refer to either the page
27  number in the bottom center of the page or the bates-stamped numbers on the bottom-right-hand corner of the
    page.
28

1  Lovelock Correctional Center (LCC); however, the allegations set forth in Plaintiff's complaint

2  pertain to events taking place when he was an inmate at High Desert State Prison (HDSP) and

3  the Southern Desert Correctional Center (SDCC).  (*Id.*)  Plaintiff, a *pro se* litigant, brings this

4  action pursuant to 42 U.S.C. § 1983.  (*Id.*)  Defendants are various NDOC administrators and

5  employees.  (*Id.* at 2-3.)  Plaintiff seeks declaratory, injunctive, and monetary relief.  (*Id.* at 17-

6  19.)

7       In October 2004, Plaintiff pleaded guilty to one count of burglary and was sentenced

8  to thirty-six to ninety-six months of incarceration.  (Pl.'s Mot. for Summ. J. 4 (Doc. #131).)[3]

9  However, the court suspended Plaintiff's sentence and placed him on probation for a term of

10  five years.  (*Id.*)  In early 2006, the State of Nevada revoked Plaintiff's probation and imposed

11  his original sentence.  (*Id.*)  On March 2, 2006, Plaintiff underwent initial classification at

12  HDSP upon admission to the NDOC.  (*Id.* at 23-27.)  An administrative regulation in effect at

13  the time, Administrative Regulation (AR) 504, required NDOC employees to prepare an Initial

14  Classification Report during the admission process. (Defs.' Mot. for Summ. J.  Ex. D MSJ 042-

15  045.)  In addition to other information, the Initial Classification Report contained a summary

16  of the inmate's prior criminal history.  (*Id.* Ex. D MSJ 043.)  With respect to the criteria for

17  assigning an inmate to minimum custody, AR 521 provided, in part, the following:

18       1.3.1   No inmate will be assigned to minimum custody if they have a current
             or prior conviction for a sexual offense.
19       1.3.2   Inmates should not be assigned to minimum custody if they have
             engaged in sexual misconduct.
20            1.3.2.1 Minimum custody inmates may have no arrests for
                  sexual offenses or sexual misconduct.
21            1.3.2.2 An inmate who has *a* singular arrest for a sex offense
                  may be considered for minimum custody status on a
22                case-by-case basis, based upon the documentation
                  available which describes the conduct and the outcome
23                of the charge.

24  (*Id.* Ex. D MSJ 054(a)) (emphasis in original).  AR 521 defined sexual misconduct as:

25       Behavior which is sexual in nature to include unwanted touching, sexual

26

27       [3]  Plaintiff's Motion for Summary Judgment is docketed as two documents, Doc. #131 and Doc. #131-1.

28                                            2

1  exposure by the offender, or the disrobing of a victim, or any sexual activity

2  which is prohibited by law.  The sexual activity of the inmate does not require
a conviction to meet the definition of sexual misconduct.

3  (*Id.* Ex. D MSJ 052.)

4  Defendant Baca[4] conducted Plaintiff's initial classification assessment and custody level

5  recommendation after reviewing Plaintiff's Pre-Sentence Investigation Report (PSI) and other

6  documentation. (*Id.* at 4.) The PSI and other documentation contained information regarding

7  Plaintiff's arrest in November 1984 in New York for rape and sodomy.  (Doc. #126-1 at 2, 8

8  (sealed).)  None of the documents indicated the disposition of Plaintiff's 1984 arrest.  (*Id.*)

9  Based on this information, Defendant Baca entered the following as a component of Plaintiff's

10  Initial Classification Report:

11  44 YEAR-OLD SECOND TERMER PROBATION VIOLATOR SERVING
36/120 FOR BURGLARY.  CLAR [sic] COUNTY COMMIT. I/M CLAIMS

12  SMOKER, JEWISH, ENGLISH. NO ENEMIES OR GANG AFFILLIATION
[sic]. DENTAL RESTRICTIONS NOTED. INMATE HAS ARREST HISTORY

13  FOR SODOMY/INTERCOURSE/FORCIBLE AND RAPE WITH NO
DISPOSITION NOTED.  NO MIN/317/CASA IN FUTURE WITHOUT

14  CASEWORK ON THOSE CHARGES. IS PENDING TRIAL FOR C217433
BURGLARY. RECOMMEND MEDIUM CUSTODY/SDCC. I/M IS OLDER,

15  WEAKER, HAS BEEN NONPROBLEMATIC AT HSDP AND IN CCDC.
HOUSE HDSP/MEDIUM PEND TRANSFER.  HENDRICKSON

16

17  (*Id.* Ex. D MSJ 076.)  A subsequent entry made on March 8, 2006, stated the following, in

18  relevant part:

19  FROSCHAUER OK SDCC/MED. NO MIN/317/DRUG COURT: (F) HOLD IN
PLACE FOR CASE #C219594 & CASEWORK NEEDED ON PRIOR C-1

20  CHARGE BEFORE MIN CUSTODY CONSIDERATION. . . .

21  (*Id.* Ex. D MSJ 077.)

22  Between March 2006 and February 2007, Plaintiff made several inquiries regarding his

23  ability to go to "camp," a minimum custody facility.  (*Id.* Ex. D MSJ 078-079, 082; Pl.'s Mot.

24  for Summ. J. 42-43 (Doc. #131-1).)  In April 2006, an NDOC employee responded to Plaintiff's

25  inquiry by stating, " . . . no camp/min until casework complete regarding prior sexual

26

27  [4] The court has been advised that Defendant Regina Hendrickson is now known as Regina Baca.  (Doc.
#68.)

28

1
2
3
4
5

arrest/charge (?)." (*Id.* Ex. D MSJ 079.) In June 2006, Plaintiff received another response to his inquiry informing him that he had a "Clark County Felony hold" that prevented him from going to camp. (*Id.* Ex. D MSJ 082.)  In July 2006, NDOC staff informed Plaintiff that his "felony hold" had been removed. (*Id.* D MSJ 085.) On July 11, 2006, Plaintiff was transferred from HSDP to SDCC.  (Doc. #130 at 2.)

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

    On February 16, 2007, Plaintiff specifically inquired about his classification as a "sex offender."  (Pl.'s Mot. for Summ. J. 43 (Doc. #131-1).)  An NDOC employee responded that "[w]hile in the NDOC, you are considered a sex offender if you have had any sexual arrests in your past and there is not enough info on the details of the arrest.  As you know, paperwork has been requested from the courts in order to get the needed info on your sex arrests."  (*Id.*)  On March 2, 2007, and April 2, 2007, NDOC notified Plaintiff that he would be considered a "sex offender" for classification purposes based on his arrest for a crime involving sexual misconduct.  (Pl.'s Mot. for Summ. J. 30, 32 (Doc. #130).)  The notice stated that "[s]ex offenders are ineligible for Minimum Custody or below."  (*Id.*)  Plaintiff requested a Full Classification Committee hearing, as allowed by the notice, to challenge his classification. (*Id.*) A Full Classification Committee hearing was held on May 14, 2007, in which Plaintiff presented certified copies of a grand jury dismissal of the rape and sodomy charges from New York in 1984.  (Pl.'s Mot. for Summ. J. 33 (Doc. #131); Defs.' Mot. for Summ. J. 6.)  NDOC policy prohibits employees from accepting official documents from inmates because of forgery concerns.  (Defs.' Mot. for Summ. J. 6.)  Thus, the Full Classification Committee refused to accept Plaintiff's certified copies of the dismissal of the rape and sodomy charges.  (*Id.*) According to Defendants, after the hearing, a caseworker attempted to contact the police department in New York directly but was unable to do so because the New York area code was not in the prison's phone system.  (*Id.*; Defs.' Reply 4-5 (Doc. #151).)  In July 2007, Plaintiff filed a grievance concerning his classification and the refusal of his documents by the Full Classification Committee.  (Pl.'s Mot. for Summ. J. 29 (Doc. #131-1).)  An NDOC employee responded that the NDOC "shall not accept legal paper work from inmates" and that the

28

4

1
2
3
4

Offender Management Division (OMD) "are the only ones that we will accept legal paper work from." (*Id.* at 30.)  The NDOC employee suggested that Plaintiff "have [his] attorney [or] someone from [his] committing county forward [his] information to OMD in Carson City." (*Id.*)

5
6
7
8
9
10
11
12

On August 20, 2007, after Plaintiff was transferred from SDCC to LCC, a caseworker telephonically verified with the Ulster County Court that Plaintiff's rape and sodomy charges had been dismissed by the grand jury. (Doc. #130 at 3.)   Shortly afterward, certified documents from the Ulster County Court were sent to LCC. (Defs.' Mot. for Summ. J. 7, Ex. D MSJ 103-05.) On August 24, 2007, Plaintiff was recommended for approval for minimum custody and transfer to the Humboldt Conservation Camp.  (Doc. #130 at 3.)   This recommendation was approved on October 22, 2007, and Plaintiff was assigned to the Humboldt Conservation Camp beginning on October 23, 2007. (*Id.*)

13
14
15
16
17

Plaintiff alleges that Defendants violated his due process and equal protection rights under the Fourteenth Amendment during intake at HDSP by labeling him a "sex offender" without providing him a classification committee hearing.[5] (Pl.'s Compl. 3, 5-12.) As a result, Plaintiff alleges that he was deprived of minimum custody status and a work-camp assignment. (*Id.*)

18

## II. LEGAL STANDARD

19
20
21
22
23
24
25

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   *Id.* (citing

26

27

[5]  In an order issued August, 6, 2008, the court dismissed Plaintiff's conspiracy claim asserted under 42 U.S.C. § 1985(3).  (Doc. #27 at 9-11.)

28

1   Fed.R.Civ.P. 56(c)).  Where reasonable minds could differ on the material facts at issue,

2   however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441

3   (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  In deciding whether to grant summary

4   judgment, the court must view all evidence and any inferences arising from the evidence in the

5   light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

6   1996).  In doing so, the court must defer to the professional judgment of prison administrators

7   when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530

8   (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

9         The moving party bears the burden of informing the court of the basis for its motion,

10  together with evidence demonstrating the absence of any genuine issue of material fact.

11  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

12  the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

13  but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S.

14  at 248.  Although the parties may submit evidence in an inadmissible form, only evidence

15  which might be admissible at trial may be considered by a trial court in ruling on a motion for

16  summary judgment. Fed. R. Civ. P. 56(c).

17        In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

18  determining whether a fact is material; (2) determining whether there is a genuine issue for the

19  trier of fact, as determined by the documents submitted to the court; and (3) considering that

20  evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248.  As to

21  materiality, only disputes over facts that might affect the outcome of the suit under the

22  governing law will properly preclude the entry of summary judgment; factual disputes which

23  are irrelevant or unnecessary will not be considered.  *Id.*  Where there is a complete failure of

24  proof concerning an essential element of the nonmoving party's case, all other facts are

25  rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*,

26  477 U.S. at 323.

27

28

1

### III. DISCUSSION

2

**A.   EQUAL PROTECTION CLAIMS**

3

4

5

6

Plaintiff claims that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by (1) classifying him as a "sex offender" at initial classification, and (2) refusing to accept his certified documents showing that the rape and sodomy charges had been dismissed at reclassification. (Doc. #143 at 2; Doc. #153 at 3.)

7

8

Defendants argue that Plaintiff fails to present evidence of discrimination to support an equal protection claim. (Defs.' Reply 10.)

9

10

11

12

13

14

15

16

In order to state a viable equal protection claim, Plaintiff "must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1971, 1982 (9th Cir. 2003) (citing *Barren v. Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). Here, Plaintiff does not allege Defendants intentionally discriminated against him because of his membership in a protected class either at initial classification or at reclassification.

17

18

19

20

21

22

23

24

25

26

27

Where state action "does not implicate a fundamental right or a suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). In this case, Plaintiff claims that at initial classification he was treated differently from other similarly situated inmates. (Doc. #143 at 2.) According to Plaintiff, unlike his classification as a sex offender, other inmates who had an arrest but not a conviction for a sex offense were not classified as sex offenders. (*Id.*) Aside from this general and non-specific allegation, Plaintiff fails to present evidence that he was treated differently from others similarly situated at initial classification. As to Plaintiff's claim that Defendants violated his

28

1   rights at reclassification, Plaintiff also fails to present evidence that he was treated differently

2   than others similarly situated.   Plaintiff alleges that Defendants violated his equal protection

3   rights by refusing to accept his documentation at reclassification.  However, Plaintiff does not

4   allege that this policy was implemented differently as to him or any other inmate.  To the

5   contrary, Plaintiff testified at his deposition that the policy applies to everybody.  (Defs.' Mot.

6   for Summ. J. Ex. D MSJ 18.)  Therefore, Plaintiff fails to show that a genuine issue of material

7   fact exists with respect to his equal protection claims, and Defendants are entitled to summary

8   judgment.

9   **B.    DUE PROCESS CLAIMS**

10          Plaintiff alleges that Defendants violated the Due Process Clause of the Fourteenth

11   Amendment by classifying him as a "sex offender" at initial classification without providing him

12   a classification committee hearing. (Pl.'s Compl. 3, 5-12.)  Plaintiff claims that his classification

13   as a sex offender precluded him from minimum custody status and a work-camp assignment.

14   (*Id.* at 3.)  According to Plaintiff, during the time he was classified as a sex offender, he could

15   not freely inform other inmates of his dispute with the NDOC for fear of being subjected to

16   violence because of his sex offender status.  (*Id.* at 7.)  Plaintiff alleges that prison officials

17   treated him differently because of his sex offender classification.  (*Id.*)

18          Defendants argue that Plaintiff fails to establish that he was deprived of a protected

19   liberty interest, and thus, due process was not required.  (Defs.' Mot. for Summ. J. 9-13.)

20          1.    Procedural Due Process

21          In analyzing the procedural safeguards owed to an inmate under the Due Process Clause,

22   the court considers two elements: (1) whether the inmate suffered a deprivation of a

23   constitutionally protected liberty or property interest, and (2) whether the inmate suffered a

24   denial of adequate procedural protections. *Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003)

25   (citations omitted).  To state a cause of action for deprivation of procedural due process, a

26   plaintiff must first establish a liberty interest for which the protection is sought.  *Serrano v.*

27   *Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  Liberty interests can arise both from the

28

8

1    Constitution and from state law. *See Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).

2          First, under the Constitution itself, a liberty interest is implicated when the conditions
3    of confinement "[exceed] the sentence in such an unexpected manner as to give rise to
4    protection by the Due Process Clause of its own force." Courts have generally held that where
5    an inmate must submit to treatment as a result of his or her classification, the inmate has a
6    liberty interest under the Due Process Clause.    In *Vitek v. Jones*, 445 U.S. 480 (1980), the
7    Supreme Court held that a Due Process Clause liberty interest was implicated when an inmate
8    was "characteriz[ed] . . . as a mentally ill patient and was transfer[ed] to [a mental hospital to
9    undergo] mandatory behavior modification treatment." *Id.* at 488.  In reaching its conclusion
10   the Court considered the stigmatization of the label itself as well as the resultant consequences
11   from the label. *Id.* at 494. In *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999), the Eleventh
12   Circuit found a Due Process Clause liberty interest where inmates, who had never been
13   convicted of a sex crime, were classified as sex offenders and would be ineligible for parole
14   unless they attended group therapy. *Id.* at 1288, 1292.  Similarly, in *Coleman v. Dretke*, 395
15   F.3d 216 (5th Cir. 2004), the Fifth Circuit found a Due Process Clause liberty interest where
16   the regulation at issue subjected inmates classified as sex offenders to "intrusive and behavior-
17   modifying [therapy] techniques" of a "highly invasive nature." *Id.* at 223.

18         In contrast, here, Plaintiff was not required to participate in a mandatory treatment or
19   therapy program because of the NDOC labeling him a sex offender. Although Plaintiff alleges
20   that he suffered stigmatizing consequences because of the label, the lack of mandatory
21   treatment attendant with the label distinguish his circumstances from those cases where a
22   liberty interest under the Due Process Clause itself was found. The stigma and denial of a lower
23   security classification and work-camp assignment resulting from being labeled a sex offender
24   by the NDOC did not constitute conditions of confinement exceeding Plaintiff's sentence in an
25   unexpected manner so as to give rise to a liberty interest under the Due Process Clause itself.
26   Thus, Plaintiff cannot establish a liberty interest under the Constitution giving rise to
27   procedural protections.

28   ///

1        Second, liberty interests created by the state are generally limited to freedom from

2   restraint that "imposes atypical and significant hardship on the inmate in relation to the

3   ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  To determine

4   whether a restraint imposes "atypical and significant hardship," a court considers a condition

5   or a combination of conditions or factors on a case by case basis, rather than invoking a single

6   standard.  *Serrano*, 345 F.3d at 1078.  Three factors guide this inquiry: "(1) whether the

7   challenged condition mirrored those conditions imposed upon inmates in administrative

8   segregation and protective custody, and thus comported with the prison's discretionary

9   authority; (2) the duration of the condition, and the degree of restraint imposed; and (3)

10  whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.*

11  (citing *Sandin*, 515 U.S. at 486-87; *Keenan v. Hall*, 84 F.3d 1083, 1089 (9th Cir.

12  1996))(quotations omitted).

13       In *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997), the Ninth Circuit considered whether

14  the labeling of inmates as sex offenders and compelling their participation in a treatment

15  program as a precondition to their eligibility for parole gave rise to a state-created liberty

16  interest.  *Id.* at 827.  The court stated that it could "hardly conceive of a state's action bearing

17  more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." *Id.*

18  at 829.  Moreover, the court found that because the State's regulations rendered "the inmate

19  *completely ineligible* for parole if the treatment program [was] not satisfactorily completed,

20  the attachment of the 'sex offender' label to the targeted inmate has a practical and inevitable

21  effect on the inmate's conduct." *Id.* (emphasis in original).  The court held that the stigmatizing

22  effect of labeling a prisoner a sex offender "*coupled with* the subjection of the targeted inmate

23  to a mandatory treatment program whose successful completion is a precondition for parole

24  eligibility create the kind of deprivations of liberty that require procedural protections." *Id.* at

25  830. (emphasis added).

26       The instant case is distinguishable from *Neal* in two respects.  First, unlike the sex

27  offender label in *Neal*, Plaintiff's sex offender label did not subject him to a mandatory

28  treatment program in order for him to become eligible for parole.  Second, unlike the plaintiff

in *Neal*, Plaintiff's sex offender label does not affect his parole eligibility.  Certainly, Plaintiff's preclusion from a lower custody level and work-camp assignment is somewhat analogous to the plaintiff's preclusion from parole in *Neal*.  However, preclusion from eligibility for different custody levels within a prison would seem to be a less ominous deprivation than total ineligibility for parole.  On the other hand, this case is similar to *Neal* in that Plaintiff asserts that he suffers significant stigmatizing consequences from being classified as a sex offender.  Despite this similarity, the lack of a mandatory treatment program and parole ineligibility resulting from Plaintiff's label as a sex offender distinguish Plaintiff's circumstances from those in *Neal*.  Thus, the differences between this case and *Neal* weigh against finding that Plaintiff's classification as a sex offender implicates a liberty interest.

        Moreover, applying the three *Serrano* factors further illustrates that Plaintiff's label as a sex offender fails to amount to an "atypical and significant" hardship giving rise to a state-created liberty interest.  Even though the first factor weighs in favor of finding a liberty interest, the second and third factors cut against finding a liberty interest.  Thus, in examining all three factors together, Plaintiff's classification as a sex offender did not result in an "atypical and significant" hardship.

        With regard to the first factor, Plaintiff's classification as a sex offender did not comport with the prison's discretionary authority.  In *Kritenbrink v. Crawford*, 457 F. Supp. 2d 1139, 1148 (D. Nev. 2006), under highly analogous facts, the court determined that the plaintiff's "classification resulted in stigma and attendant disadvantages that do not 'mirror' the conditions imposed on those in administrative segregation or protective custody."  The court concluded that the denial of minimum custody status and work-camp assignments alone mirror the conditions experienced by inmates in administrative segregation or protective custody.  *Id*. at 1149.  However, the court found that the "morally charged [sex offender] label" combined with the plaintiff's fear of being subjected to violence from other inmates and being treated differently by prison officials because of the label "goes beyond the typical hardships of prison life."  *Id*. at 1148-49.   Here, Plaintiff similarly fears violence from other inmates and alleges that prison officials treated him differently because of his sex offender label.  Thus, as

11

in *Kritenbrink*, the first factor favors finding a liberty interest in this case.

As to the second factor, the duration that Plaintiff was classified as a sex offender and the degree of restraint imposed based on that label do not favor finding a liberty interest. Plaintiff was classified as a sex offender from February 2006 until August 2007 – nineteen months.[6] During this time period, Plaintiff was housed at medium custody institutions and was ineligible for minimum custody institutions or a work-camp assignment.  Plaintiff does not allege that he was denied any other privileges or put under any other restrictions because of his sex offender label.  In addressing this component of the liberty-interest analysis, courts have concluded that certain combinations of conditions and durations weigh in favor of finding a liberty interest. *See e.g. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (concluding that a liberty interest existed where inmates in "supermax" facility were prohibited from almost all human contact, subjected to light for 24 hours per day, allowed only one hour per day of exercise, and were placed in the facility indefinitely); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (concluding that a liberty interest existed where a wheelchair-bound inmate was confined to non-handicapped-accessible special housing unit for two months); *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (concluding that a  plaintiff alleged a liberty interest where he was confined for 514 days under conditions that differed markedly from those in the general population); *Sells v. McDaniel,* 2008 U.S. Dist. LEXIS 109071, 2008 WL 5723604 (D. Nev. Aug. 20, 2008) (finding a liberty interest where inmate had been indefinitely segregated for over ten years under severely restrictive conditions); *Kritenbrink v. Crawford*, 457 F. Supp. 2d 1139, 1148-49 (D. Nev. 2006) (finding a liberty interest where an inmate who was labeled a sex offender retained the label for all five years he spent in prison).  On the other hand, courts have determined that other combinations of conditions and durations cut against finding a liberty interest. *See e.g. Sandin v. Conner*, 515 U.S. 472, 486 (1995) (concluding that thirty days

---

[6]  Defendants argue that the felony hold in place from February 2006 until July 2006 provided an independent ground for Plaintiff being denied minimum custody or a work camp assignment. (Defs.' Reply 9.) Excluding this time period from the liberty-interest analysis, Plaintiff remained ineligible for minimum custody and work camp solely because of his sex offender status for thirteen months.  However, for the sake of argument, the court considers the longer time-period in conducting its analysis.

in disciplinary segregation is not atypical and significant); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (concluding that ninety days in disciplinary segregation with severe restrictions on exercise, group worship, and educational opportunities is not atypical and significant); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (finding that two and one-half years of administrative segregation is not atypical and significant); *Griffin v. Vaughn*, 112 F.3d 703, 706-708 (3rd Cir. 1997) (finding that fifteen months of administrative segregation is not atypical and significant).

Here, the degree of restraint Plaintiff faced in medium custody is less than the restraint placed on inmates in administrative segregation. (Defs.' Mot. for Summ. J. 11-12.) Plaintiff's sex offender label precluded him from minimum custody and work camp for nineteen months. In assessing this combination of restraint and duration, the court concludes that the second factor cuts against finding a liberty interest. The court notes the closeness of this question. Nineteen months is not an insubstantial amount of time to endure a restraint. However, the court's research and analysis reveals that a relatively minimal restraint of nineteen months does not amount to circumstances favoring finding a liberty interest.

As to the third factor, Plaintiff's classification as a sex offender did not "inevitably" affect the duration of his sentence. Although Plaintiff may have been able to earn good-time credits by attending work camp during the time period he was classified as a sex offender that would have shortened his sentence, his ability to successfully do so is too speculative to demonstrate inevitability. Furthermore, Plaintiff does not allege that being labeled a sex offender renders him ineligible for parole. In *Wilkinson*, 545 U.S. at 224, the Court found that "[disqualification of] an otherwise eligible inmate for parole consideration" weighed in favor of finding a liberty interest." Here, Plaintiff was denied eligibility for minimum custody and work camp, but it appears his parole eligibility was unaffected. Under such circumstances, imposition of the sex offender label did not "invariably" affect the duration of Plaintiff's sentence.

Even though the first factor favors finding a liberty interest, the examination of all three factors together shows that Plaintiff's label as a sex offender does not result in an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" sufficient to invoke

13

the procedural protections of the Due Process Clause.  Therefore, Plaintiff fails to establish that the sex offender label implicates a state-created liberty interest to sustain a procedural due process claim, and Defendants are entitled to summary judgment.

    2.    Substantive Due Process

    Plaintiff focuses the majority of his allegations toward a procedural due process claim. However, to the extent Plaintiff states a substantive due process claim by alleging that Defendants actions were arbitrary, the court addresses it below.

    Substantive due process protects individuals from arbitrary and unreasonable government action which deprives any person of life, liberty, or property. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). To establish a substantive due process violation, the government's action must be shown to be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners v. Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)(citing *Daniels v. Williams*, 474 U.S. at 331 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property") (emphasis in original)). However, "[w]hether the point of the conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence . . . is a matter for closer calls." *Id.*

    Here, although Plaintiff alleges that he suffered stigmatizing consequences as a result of being labeled a sex offender, Defendants' actions have not produced the type of egregious harm that shocks the conscience and gives rise to a substantive due process violation. Defendants labeled Plaintiff a sex offender in compliance with AR 521 and in light of his available criminal history available at the time.  Once Defendants acquired additional

14

information showing that the charges resulting from Plaintiff's 1984 arrest were dismissed, Defendants assigned Plaintiff to work camp.

That being said, the court finds several aspects of Defendants' conduct troubling in this case. As discussed above, on these facts, the court concludes that Plaintiff does not have a liberty interest in being free from the sex offender label. Nevertheless, the court recognizes, as the Ninth Circuit did in *Neal,* that it is difficult to conceive "of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." *Neal*, 131 F.3d at 829. In viewing the facts most favorably to Plaintiff, the evidence indicates that Defendants: (1) failed to alert Plaintiff at initial classification that he was being labeled a sex offender; (2) failed to notify Plaintiff for over one year that he was labeled a sex offender; and (3) failed to obtain documentation for nineteen months to ascertain additional details of Plaintiff's 1984 arrest. In light of the NDOC policy of refusing to accept documentation from inmates, Defendants' actions in this case left Plaintiff with little recourse in his effort to have his sex offender label removed. Were it not for the one phone call placed by the NDOC employee at LCC to the Ulster County Court, Plaintiff may have remained labeled a sex offender indefinitely. Although the court finds Defendants' actions unsettling, it does not find them clearly arbitrary or "conscience-shocking." Therefore, Defendants should be granted summary judgment to the extent Plaintiff states a substantive due process claim.

### IV. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #124) and **DENYING** Plaintiff's Motion for Summary Judgment (Doc. #131).

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

15

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 9, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

16